

FILED
2012 Jul-26  AM 10:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **TRACI R. TOLAND,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | **5:11-cv-2784-AKK** |
| **MICHAEL J. ASTRUE,** ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Traci Toland ("Toland") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  This Court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence, and, therefore, **AFFIRMS** the decision denying benefits.

### I. Procedural History

Toland filed her applications for Title II Disability Insurance Benefits on September 18, 2007, (R. 109), and for Supplemental Security Income on October

1, 2007, (R. 114), alleging a disability onset date of August 2, 1998, (R. 109, 114). After the SSA denied her applications, Toland requested and received a hearing on October 28, 2009. (R. 31-56). At the time of the hearing, Toland was 43 years old, had a high school diploma, and past relevant work as a fast food cook, truck driver, and clothing store stocker. (R. 153). Toland has not engaged in substantial gainful activity since May 30, 2007. (R. 153).

On January 6, 2010, the ALJ found that although Toland has fibromyalgia and dysthymic disorder and cannot perform any past relevant work, Toland nonetheless has a residual functional capacity ("RFC") to perform limited sedentary work. (R. 18-26). Therefore, the ALJ denied Toland's claims. When the Appeals Council refused to grant review, (R. 1-6), Toland filed this action for judicial review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the proper legal standard. Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its

judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). A physical or mental impairment is "an impairment that results from anatomical, physiological, or

psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

### IV.  The ALJ's Decision

Turning now to the ALJ's decision, the court notes that, initially, the ALJ

determined that Toland has not engaged in substantial gainful activity since May 30, 2007, and therefore met Step One of the five step analysis. (R. 20). The ALJ acknowledged that Toland's combination of severe impairments of fibromyalgia and dysthymic disorder met Step Two. *Id*. The ALJ proceeded to the next step and found that Toland did not satisfy Step Three since her impairments or combination thereof neither met nor equaled the requirements for any listed impairment. (R. 21). Although he answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that Toland had the RFC to

> perform light work . . . except where [Toland] cannot come into contact with the public, cannot perform work in tandem with coworkers, and is only capable of unskilled work where she can have the option to sit or stand at will.

(R. 22). Further, the ALJ held that Toland could not perform any of her past relevant work. (R. 24). Lastly, in Step Five, the ALJ considered Toland's age, education, work experience, RFC, and impairments, and determined that a significant number of jobs exist in the national economy that Toland can perform, such as a bench assembler, sorter, and hand packer. (R. 25). Because the ALJ answered Step Five in the negative, the ALJ found that Toland is not disabled. (R. 26); *see also McDaniel*, 800 F.2d at 1030.

V.  Analysis

Toland contends that the ALJ's determination is not based on substantial evidence or the proper legal standards.  Specifically, Toland asserts that the ALJ (1) erred in rejecting the medical treating source opinion, (2) issued a RFC that is not based on substantial evidence, and (3) failed to consider the evidence.  Doc. 8 at 1.  The court addresses each contention below.

*A. The ALJ's Did Not Err in Rejecting the Treating Source Opinion.*

Toland's first contention of error is related to the weight the ALJ assigned to Dr. Mary Toland's[1] ("Dr. Toland") September 25, 2007, opinion.  Doc. 8 at 5.  Specifically, Toland claims the "ALJ purported to give [the September 25, 2007,] opinion some weight but ultimately rejected it in favor of an earlier assessment in July 2006 which implied [Toland] was capable of some work but not in her chosen field."  Doc. 8 at 6-7.  A review of the medical record shows that on July 21, 2006, Dr. Toland noted that Toland accepted a position in adverse conditions in an IHOP kitchen when Toland failed to obtain a job in a pharmacy.  (R. 258).  The work purportedly resulted in some degree of heat injury such as nausea and vomiting and exacerbated Toland's fibromyalgia.  *Id*.  However, Dr. Toland did not opine that these injuries rendered Toland disabled.

---

[1]Dr. Toland is not related to Plaintiff Toland.

Toland visited Dr. Toland a year later, on August 2, 2007, during which Dr. Toland noted that Toland had a history of fibromyalgia, chronic pain, and fatigue and that "[s]he has tried to do work at many jobs and the physical requirements and stress have always worsened her condition." (R. 250). Dr. Toland stated also that Toland felt weak and off balanced at times while walking and occasionally wobbled or fell. (R. 251). As a result, Dr. Toland opined that Toland could not work in a kitchen for more than 10-15 minutes or bend low or reach high, and must change positions from lying, sitting, or standing every 15-30 minutes because of pain. *Id*. Dr. Toland made similar findings a month later when, on September 25, 2007, she noted that Toland "suffers from fibromyalgia, chronic pain, chronic fatigue which makes her unable to keep any kind of job. She must constantly change positions and cannot sit, stand, walk, bend, stoop, or reach for very long at a time." (R. 140). It was during this visit that Dr. Toland opined that Toland is disabled: "[b]ecause of this [i.e., Toland's ailments] she is unable to work. Her condition is not likely to improve at all and probably will worsen over time. Because of this I feel it is in her best interest to permanently stop working." *Id*.

Toland claims that Dr. Toland's September 25, 2007, opinion supports her disability claim and contends that the ALJ erred when she rejected the opinion. Doc. 8 at 5-7. Specifically, Toland contends that the ALJ erred when she opted to

rely on Dr. Toland's July 21, 2006, opinion instead because "[i]n light of the fact that [the July 21, 2006, opinion] predated the alleged onset date by ten months, this was hardly fair to [Toland] and detrimental to her credibility which reflected a willingness to keep trying to work before resorting to a disability claim." Doc. 8 at 7.  As a threshold matter, the court notes that Toland's contentions of error ignore that the regulations make clear that the ALJ is responsible for assessing the RFC.  20 C.F.R. § 416.946.  Moreover, the regulations state unequivocally that "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R § 404.1527(d)(1).  Instead, in determining whether a claimant is disabled, the ALJ "will always consider the medical opinions in [the] case record together with the rest of the relevant evidence [she] received." 20 C.F.R.§ 404.1527(b).  Furthermore, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987).

   Based on the court's review of the record, it is clear the ALJ sufficiently reviewed and considered Dr. Toland's findings and gave them the proper weight.  First, the ALJ acknowledged Dr. Toland's fibromyalgia diagnosis and accepted it even though it lacked a clinical foundation: "[w]hile there was no clinical evidence for the diagnosis of fibromyalgia, the [ALJ] accepted the diagnosis and granted the limitations attributable to it." (R. 21).  As a result, the ALJ found that

Toland can only perform limited sedentary work with the option to sit or stand at will. (R. 22). However, the ALJ rejected Dr. Toland's opinion that Toland is totally disabled because it was "not supported by any clinical evidence . . . ." (R. 24). While Toland obviously disagrees, her contentions of error fail because the ALJ's decision is supported by substantial evidence. Specifically, the ALJ relied, in part, on the December 3, 2007, Function Report-Adult-Third Party questionnaire, (R. 195), Toland's mother completed, (R. 24), three months after Dr. Toland's findings. In the questionnaire, although Toland's mother reported that pain affected Toland's ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs, (R. 200), Toland's mother stated that Toland lived alone with a service dog that Toland cared for without assistance, vacuumed every two weeks, washed dishes everyday, and washed laundry once a week with assistance, (R. 195-97). In other words, Toland is able to engage in some activity.

     Significantly, the ALJ relied also on the medical evidence, including the February 5, 2008, Consultative Examiner's ("CE") report by Dr. John Lary ("Dr. Lary"), which, as a whole, does not support Dr. Toland's findings of total disability. For example, while Toland is relying on Dr. Toland's opinions from August and September 2007 to support her disability contention, the court notes that when Toland visited Dr. Lary on February 5, 2008, Toland reported that she

could stand for about 10-15 minutes and that she was generally able to dress, eat, and bathe. (R. 319-321). Moreover, Dr. Lary found that Toland was in "no acute distress," could make a good fist with both hands, had no tenderness, warmth, redness, or deformities, and had good strength. (R. 322). Finally, although Dr. Lary found that Toland could only flex her upper body 30 degrees, hyperextend only 5 degrees, and could not squat or rise from a kneeling position without difficulty, Dr. Lary noted nonetheless that Toland did not use an assistive device despite Toland's alleged pain. (R. 319).

Two and a half months later, on April 24, 2008, based on a referral from Dr. Toland, Dr. Morris Seymour ("Dr. Seymour") examined Toland's lumbar spine and found that Toland "[e]xhibits average muscle development and erect posture . . . . [and that] [n]o deformity is noted of the shoulders, pelvis, knees, ankles, and feet." (R. 363). During the exam, despite Toland's report that only medication helped her alleged pain, Dr. Seymour noted that he found nothing structural in the x-rays to explain Toland's alleged pain. (R. 363-364). Consequently, on April 29, 2008, Dr. Seymour performed a MRI of the thoracic spine that was otherwise unremarkable, except for a very small parcentral disc protrusion to the T7/8 and T 8/9 levels. (R. 367). Finally, while Dr. Seymour also noted that Toland may be suffering from fibromyalgia, (R. 369), Dr. Seymour never opined that Toland is

disabled and unable to work.

The ALJ's decision to rely on Drs. Lary's and Seymour's opinions, in conjunction with Dr. Toland's opinion, is supported by substantial evidence. As the ALJ acknowledged, Dr. Seymour's opinion was "consistent with Dr. Toland who stated [Toland] had fibromyalgia and chronic low back pain," (R. 23), and Dr. Lary's opinion was consistent with Dr. Toland who stated that Toland needed to change positions frequently and could not sit, stand, walk, bend, or stoop, (R. 24). Moreover, except for the total disability finding which the medical evidence failed to support, the ALJ gave Dr. Toland's opinion great weight and factored Dr. Toland's findings into the RFC by limiting Toland to unskilled sedentary work with the option to sit or stand at will. (R. 22). Significantly, the ALJ's decision to reject Dr. Toland's total disability finding is supported by substantial evidence because although three doctors found that Toland has fibromyalgia, only Dr. Toland opined that Toland is totally disabled. Furthermore, Dr. Toland made this finding even though Toland admitted she could stand for about 10-15 minutes at a time, was generally able to dress, eat, and bathe herself, and lived alone. In other words, the ALJ had sufficient evidence to discount Dr. Toland's opinion.

### 2. The ALJ Properly Evaluated Toland's Mental Health Limitations

Toland raises several alleged errors related to her mental health and the

findings of consulting psychological examiner Dr. William McDonald ("Dr. McDonald"). First, Toland contends that the ALJ erred because she "found that [Toland] has had no mental health treatment but did not report that [Toland] has been treated with Zoloft, Cymbalta, and Effexor at her treating clinic . . . . The ALJ did not report or discuss a single medication, its type, dosage, effectiveness and side effects as required." Doc. 8 at 8. Despite this contention, Toland failed to cite any evidence showing that she suffered from disabling side effects from her medications. This failure is significant because Toland bears the burden of proving that she is disabled and is responsible for producing evidence to support her claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citations omitted).

Second, Toland contends that the ALJ failed to properly consider Dr. McDonald's Global Assessment of Functioning (GAF) score of 50 and poor and progressive prognosis because the ALJ improperly credited these findings to Dr. Lary. Doc. 8 at 8. Toland is correct that the ALJ referred to Dr. McDonald as Dr. Lary. (R. 24). However, this error is harmless because the ALJ referenced Dr. McDonald's opinion in making her RFC finding based on Toland's mental health. *Id.* Moreover, the error is also harmless because Dr. McDonald never opined that Toland is disabled. *Id.* Rather, Dr. McDonald stated that Toland had adequate

hygiene and grooming, walked with a slight limp, had to get up on several occasions during the interview due to back pain, seemed irritable and depressed, had low average range intelligence, suffered from major depression, and had a pain disorder associated with both psychological factors and a general medical condition, probably personality disorder, borderline and paranoid features, fibromyalgia, and chronic back pain. (R. 331-332). Despite these findings, Dr. McDonald disagreed with Toland's assertions that she is disabled due to chronic pain and found that Toland "appears generally capable of understanding, carrying out, and remembering instructions, although memory and concentration are likely to be somewhat impaired by her pain depressive symptoms, and medication affects." (R. 333). Significantly, Dr. McDonald blamed Toland's problems on irritability and negativity and opined that "[t]his is likely to impair her ability to respond appropriately to supervision, co-workers and pressures. She is capable of functioning independently . . . ." *Id.*

Third, Toland contends that the ALJ ignored Dr. McDonald's opinion because "Dr. McDonald did not opine that Plaintiff would be fine in the workplace if supervisors and coworkers were removed from the work setting, or that memory and concentration would be any better under these circumstances . . . ." Doc. 8 at 9. The court disagrees because the RFC determination is consistent with Dr.

McDonald's findings and, in fact, the ALJ limited Toland's RFC to include that Toland cannot interact with the public or perform work in tandem with coworkers. (R. 22).

Finally, Toland asserts that the ALJ failed to acknowledge Dr. McDonald's GAF score of 50. Doc. 8 at 9. Basically, Toland claims that a GAF of 50 means she is disabled. However, "an opinion concerning GAF, even if required to be accepted as valid, would not translate into a specific finding in regard to functional limitations." *Ward v. Astrue*, No. 3:00-CV-1137-J-HTS, 2008 WL 1994978, at *3 (M.D. Fla. May 8, 2008). Thus, a GAF of 50 does not automatically support a disability finding especially when, as here, the ALJ accounted for it and Toland's overall mental condition by adding additional limitations to Toland's RFC.

Ultimately, Toland's reliance on Dr. McDonald's assessment to support her disability claim fails because Dr. McDonald disagreed with Toland's contention that she is disabled due to her chronic pain, found that Toland "is capable of functioning independently," and that Toland's irritability and negativity will likely impair, not prohibit, Toland's ability to respond appropriately to supervisors and co-workers. (R. 333). In short, the evidence supports the ALJ's decision to limit Toland's RFC to account for the mental limitations Dr. McDonald noted in his examination of Toland. Accordingly, the RFC determination is consistent with

Dr. McDonald's assessment.

### 3. The ALJ Properly Considered the Evidence

Finally, Toland asserts the "Appeals Council merely added Exhibits 25F and Exhibit 26F as well as Exhibits 27F through 32F to the record without comment and erred in so doing and failing to remand for reevaluation of the evidence and RFC." *Id*. at 10.  Although the Appeals Council specifically provided that "we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council," (R. 1), Toland maintains that "the evidence predates the ALJ decision and would reasonably have impacted both physical RFC particularly with respect to upper body limitations, and the mental RFC." Doc. 8. at 10.   The court disagrees.

The Federal Regulations provide that "[i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b); *Smith v. Social Security Admin.*, 272 F. App'x 789, 800 (11th Cir. 2008).  However, here, Toland submitted Exhibits 27F, 28F, and 29F, documenting Toland's breast cancer diagnosis, to the Appeals Council prior to the ALJ's decision on January 6, 2010.  (R. 5-6, 26).  Therefore, Toland has no credible basis for claiming that the ALJ did not consider the newly

submitted evidence before the ALJ issued her decision.  Moreover, the ALJ may have simply rejected the evidence since it does not support the disability claim. Specifically, the evidence showed that on November 4, 2009, Toland received an ultrasound of her left breast to intestate a lump,  (R. 947), and was diagnosed with breast cancer on or around November 17, 2009, (R. 945).  On December 3, 2009, Toland received a wire localized left lumpectomy with sentinel node biopsy,  (R. 946), "tolerated the procedure well," and was in stable condition.  *Id*.  On December 29, 2009, Toland received a left subclavian vein french portocath insertion and, again, "tolerated the procedure well."  (R. 945).  As of December 29, 2009, Toland had yet to start chemotherapy and the medical records do not indicate that Toland was in any significant pain.  *Id*. While the court is sympathetic to Toland's condition, however, the "mere existence of [this condition] does not reveal the extent to which [it] limit[s] [Toland's] ability to work or undermines the ALJ's determination in that regard."  *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005).  Thus, at the time of the ALJ's opinion, on January 6, 2010, the record as whole, including the new medical records, did not support a finding of disability.  Accordingly, remand is not warranted based on the substance of the new medical evidence.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Toland is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. The final decision of the Commissioner is, therefore, **AFFIRMED**. A separate order in accordance with this memorandum of decision will be entered.

**DONE** the 26th day of July, 2012.

							_____
							**ABDUL K. KALLON**
							UNITED STATES DISTRICT JUDGE